THE PEOPLE ex rel. ALBERT DAY, Respondent, v. JOHN H. BERGEN, Appellant.

*Commitment for contempt — variance of requirements of warrant from those of order directing warrant to issue — section 2 of chapter 619 of 1870 — lien of assessment made under.*

The appellant, a referee appointed to sell certain real estate in pursuance of a decree of foreclosure, was, by an order made January 21, 1873, adjudged guilty of a contempt for failing to comply with the terms of an order made December 20, 1872, by which he was directed to pay all taxes and assessments upon the premises " which were then due and payable."

All the taxes and assessments had been paid, except two-thirds of an assessment for the opening of Atlantic avenue, made in pursuance of chapter 619 of 1870. Section 2 of this chapter provides that "the amount of the assessment * * * shall be returned to the supervisors of the town and * * * be added to and make a part of the annual taxes, in equal proportion, for each of the ensuing three years, with interest from the confirmation, as the portions unpaid on the lands so assessed." At the time of the sale only one-third of the assessment had been added to the tax rolls.

In June, 1874, a warrant of commitment was issued directing the commitment of the appellant until he should pay " all the taxes and assessments which were due and payable *or a lien upon said premises. Held* (1), that it was questionable whether any portion of the assessment became a lien until it was added to the tax roll ; (2), that no portion thereof became *due and payable* until it was added thereto ; (3), that as the order of December 20, 1872, only required the payment

of the taxes and assessments "due and payable" at the time of the sale, and the order of January 20, 1873, convicting the defendant of contempt, was to the same effect, it did not authorize the issuing of a commitment, requiring the payment of those which were then *liens* upon the premises, but not due and payable.

APPEAL from an order made at the Special Term, denying a motion to vacate and set aside a commitment for contempt.

*John H. Bergen,* appellant, in person. The variance between the orders and the writ is fatal. (*Butler* v. *The State,* 3 McCord, 383; *Com.* v. *Unknown,* 6 Gray, 489; *Hall* v. *The State,* 3 Kelly, 18; *State* v. *Petty* [S. C.], — Hawk., 59; Wharton Cr. Law, vol. 1, § 365; 1 Tidd Pr. p. 293, and cases cited in note *hh*.)

*Albert Day,* respondent, in person.

TALCOTT, J.:

This is an appeal from an order made at a Special Term, in Kings county, denying a motion to set aside a process of commitment against the defendant. The process purported to have been issued under an order of the Special Term, made on the 21st of January, 1873. That order has been affirmed by the General Term of this court, and by the Court of Appeals. (33 N. Y., 404.)

The appeal before us, therefore, cannot involve any renewed discussion as to the merits of the order, or its validity; nor can we hold it to be void and incapable of execution for uncertainty. It must be assumed here that the order was, in all respects, regular and valid. The only question open on this appeal is, whether the process, which the defendant seeks to set aside, is in strict conformity with the order under which it is assumed to have been issued. The order, being in derogation of personal liberty, is, unquestionably, to be strictly construed, and not to be varied or enlarged by any intendments or presumptions. It must be held to fully express the intention of the court, neither more nor less. From the various orders, affidavits and accompanying papers it is somewhat difficult to arrive at an accurate and precise knowledge of the point in controversy between the parties. But, from the papers in this, and the accompanying motion to strike out the return of the sher-

iff, and from the statements and concessions of counsel, the history of the matter is understood to be substantially as follows: The defendant was a referee, appointed to sell certain premises in the town of New Lots, under a decree in the foreclosure suit of *Harvey S. Easton* v. *Charlotte A. Pickersgill and others.* The premises were sold, and struck off to the relator on the 3d day of May, in the year 1872. By the terms of the decree, *the referee was ordered that,* "out of the moneys arising from such sale, after deducting the amount of his fees and expenses on such sale, and any lien, or liens, upon said premises so sold *at the time of such sale* for taxes, assessments or prior mortgage, the said referee pay to the plaintiff, or his attorney, etc." At the time of the sale there had been no attempt at any judicial determination or ascertainment, as to what taxes and assessments were then valid liens upon the premises. After various delays and controversies between the relator, as the purchaser, and the referee, to which it does not seem to be necessary more particularly to allude, it appears that the referee has paid out all the money in his hands as the proceeds of the sale, except, perhaps, the fees and expenses of the sale, to the holder of a prior mortgage; to the plaintiff in the foreclosure suit; and to the collector of the town of New Lots, on account of certain assessments, conceded by the referee, to have been valid liens on the premises at the time of the sale. But there remains unpaid part of a certain assessment, hereafter more particularly referred to, and amounting to about the sum of six or seven hundred dollars, which the referee has not paid, and concerning his liability to pay or reserve which this controversy exists. If the unpaid residue of the assessment in question was a valid lien upon the premises at the time of the sale, then, as I understand the case, the defendant has paid over to the plaintiff in the foreclosure suit, an amount equal to the unpaid balance of the assessment, in excess of what he was entitled to receive, and is held by the court, on the appeal from the order in question, to be personally liable to refund the same, with the right to pursue his remedy against the plaintiff in the foreclosure suit, to compel a repayment of the moneys paid over to him in excess; and the real matter in controversy between the relator and the defendant is, whether the unpaid portion of the

assessment referred to, was a *lien* upon the premises at the time of the sale. By an order of December 20th, 1872, the defendant was ordered, in general terms, to apply the purchase-money received by him "to the payment and discharge of all the taxes and assessments upon the mortgaged premises mentioned in the action, and in the judgment therein, dated March 7th, 1872, which *were due and payable thereon* at the time of the sale of said premises." The order appealed from, is made for a violation of the order of December 20th, 1872, and pursues its language as to the particular taxes which the defendant is required to pay, and neither of those orders, so far as appears by the case before the Court of Appeals, a copy of which is made a part of the papers on this motion, contains any specific adjudication, or statement, as to what particular taxes or assessments were liens on the premises, at the time of the sale ; and I do not understand how the question as to the validity of the assessment for opening Atlantic avenue, or the time when the several parts of it attached as liens, could have been before the Court of Appeals, or the General Term of this court, on the appeal from the order of January 21st, 1873. After the decision of the Court of Appeals, and on the 11th day of February, 1874, an order was made, in the case of *Easton v. Pickersgill and others*, referring it to Jesse Johnson, Esq., to ascertain and report the amount of the taxes and assessment which were due upon the premises at the time of the sale, over and above the amount which the referee, under a previous order, had deposited in court to the credit of the action. The order of reference to Mr. Johnson, and the papers on which it was founded, are not among the papers submitted to us, but from the recitals in the order confirming Mr. Johnson's report, it is to be inferred, that the order of reference was made on the motion of the defendant in this proceeding, and for the purpose of having it judicially determined, whether, the plaintiff in the foreclosure suit had been paid in excess of the amount he was entitled to receive, and if so, to have such excess refunded. This involved solely the question as to what amount of taxes and assessments constituted a lien on the premises at the time of the sale, and whether the money so deposited in court was sufficient to pay such amount, without recourse to the plaintiffs in the foreclosure suit.

It appears from the report of Mr. Johnson that he was attended by the now defendant, and by the counsel for the plaintiff in the foreclosure suit; Mr. Johnson reports, amongst other amounts due for taxes and assessments at the time of the foreclosure sale, only the one-third part of the assessment for opening Atlantic avenue, which one-third had been added to the assessment roll of 1871, and that the "entire amount of taxes and assessments, with interest and defaults then (at the time of the foreclosure sale), liens on said premises," amounted to a sum, less than the amount so deposited in court, and that after the application of the moneys in court to the payment of the amount, there would be no part of said taxes and assessments left unpaid, and that there was no deficiency to be refunded by the plaintiff in the foreclosure suit. The report of Mr. Johnson was, on the 13th of February, 1874, confirmed on the motion of the plaintiff in the action, and the order of confirmation adjudges, that there is no deficiency for the plaintiff to refund or repay. It is conceded that the relator had no notice of the reference to Mr. Johnson, and no opportunity to appear and be heard on that reference, or upon the order confirming the report, and he claims that he is not bound by that proceeding, or the adjudication thereupon. It seems to me that this objection is well founded. The relator was materially interested in the question, as to whether the purchase-money paid by him should be applied in discharge of the entire assessment for opening Atlantic avenue, or only one-third of it. The relator, therefore, is not estopped by the proceedings on the reference to Mr. Johnson, from claiming that the entire assessment for opening Atlantic avenue was a lien upon the mortgaged premises at the time of the sale thereof. The reference to Mr. Johnson, and the proceedings in connection therewith seem to constitute the only attempt to have a judicial ascertainment and determination, binding upon any of the parties, specifying what particular taxes and assessments were liens upon the premises at the time of the sale. The defendant had paid over, through the clerk of the court, as I understand it, the entire amount of taxes and assessments reported by Mr. Johnson, and, as was understood to be conceded on the argument, to the various parties, the entire amount of the purchase-money received by him on the sale of the premises,

except perhaps his fees and expenses on the sale, so that the real controversy between the relator and the defendant is, whether the defendant shall be compelled to pay the remaining two-thirds ot the assessment for opening Atlantic avenue. The defendant is probably estopped by the proceedings on the reference to Mr. Johnson and their confirmation, from claiming that the plaintiff in the foreclosure suit shall refund any of the money paid over to him. On some of the various proceedings in this matter the relator, it appears, presented, attached to his motion papers, certain certificates from the comptroller's office at Albany, and certain written statements from the collector of the town of New Lots, which he claims, show that the residue of the tax for opening Atlantic avenue was a lien upon the premises at the time of the sale. These papers are scarcely intelligible without fuller explanation than appears upon the papers themselves, and do not appear to constitute any legal evidence of the existence and validity of the assessments therein referred to, and cannot be considered as conclusive upon the question as to when the several portions of the assessments became liens upon the premises, or became due and payable. The assessment in question, was for the opening of Atlantic avenue, through the town of New Lots, under the second section of the act for that purpose, being chapter 619 of the Laws of 1870. By that section it is provided, that "the amount of the assessment on the lands assessed therein, (the report of the commissioners), shall be returned to the supervisor of the town, and shall, by the supervisors of the county of Kings, be added to, and make a part of the annual taxes, in equal proportion, for each of the ensuing three years, with interest from the confirmation on the portions unpaid on the land so assessed." The statute nowhere declares that the assessments made for the lands taken to open the avenue shall be a lien upon the premises assessed ; and as it is a statute which, upon well settled principles, must be strictly construed, it is, to say the least, a matter of some doubt whether any portion of the assessment becomes a lien at any time, before such portion is, by the supervisors of the county, added to the annual taxes. And this, it was understood on the argument, is the precise question between these parties. It seems to be clear that those portions of the assessment which were not

added to the tax roll, at or before the sale on the foreclosure, could not be deemed to be " due and payable " before they were added to the tax roll. The evident intention of the legislature was to spread the assessment upon the tax rolls of three ensuing years, in equal proportions, and thus give to the parties liable to pay, a credit of three years; and that the respective portions of the tax should only become " due and payable," when added to the tax roll, to be collected as other taxes or assessments of the year. Now it will be seen that the order of December 20, 1872, for disobedience of which the order of January 21, 1873, was made, orders the defendant Bergen to apply the purchase-money to the payment and discharge of all taxes and assessments upon the premises " *which were due and payable*" at the time of the foreclosure sale; and the adjudication of the contempt, in the order of January 21, 1873, is " for failing to apply the purchase-money of said premises to the payment and discharge of all taxes and assessments upon said premises " *which were due and payable thereon at the time* of the sale of the same by said Bergen, as referee; " and the order directs that the said Bergen stand committed, etc., until he shall apply the purchase-money aforesaid to the payment " of all *said* taxes and assessments," etc.

The assessment upon these premises for opening Atlantic avenue was made by the commissioners in 1871. And one-third thereof was, by the supervisors of Kings, added to, and made a part of the annual taxes, in November, 1871. The sale on the foreclosure was on the 3d of May, 1872. So much of that assessment was, therefore, " due and payable " at the time of the sale, and was so reported by Mr. Johnson, and was paid by the application of the moneys deposited in court before the issuing of the warrant of commitment, under the order of January 21, 1873. The defendant claims that it never has been adjudicated, or in any authentic manner determined, that the two-thirds of the assessment in question were liens on the premises at the time of the sale, indeed, that it was adjudicated that they were not such liens, by restricting the amount he was authorized and ordered to pay to the amount " due and payable." The warrant of commitment was prepared by the relator, who is an attorney of this court, and was not delivered to the sheriff till June, 1874.

Hun—Vol. VI.    35

The warrant purports to recite the substance of the order of commitment, and states the order to be that the defendant be committed to the county jail, there to remain charged with the contempt until he shall apply the purchase-money of the premises to the payment " of all the taxes and assessments which were due and payable, *or a lien upon said premises*," at the time of the sale by said Bergen, as referee; and the sheriff is ordered to arrest and keep the defendant until he shall have applied the said purchase-money to the payment of the taxes and assessments aforesaid. The defendant claims that the mittimus varies in substance from the order on which it was founded, by the addition and interpolation of the words, "*or a lien upon said premises*," whereas the order required only the payment of such amount, as was " due and payable " at the time of the sale. As before suggested, it appears to me doubtful whether any part of the assessment can be held to be a lien under the statute authorizing the proceedings to lay out the avenue, until it shall have been added to the annual tax list, and this is a question upon which it appears to me the defendant has a right to have some distinct adjudication, from which he can appeal if so advised. We are bound to suppose that the language of the order, convicting the defendant of the contempt, deliberately and accurately expresses the full intention of the court which made it. It may be that the Special Term which made the order, intended to determine that the entire assessment became a lien on the premises from the time of the confirmation of the report of the commissioners. It may be that the relator was entitled to such a ruling, but such is not the import of the language used in the order; on the contrary, I do not see but that the defendant may justly claim upon the face and language of the order, that the court intended to hold and decide, that the lien at the time of the sale was confined to the amount then " due and payable." It seems to me, therefore, that by the interpolation of the words in question, the relator may have materially changed the effect of the order, and the rights of the defendant under it. An order of this character, as before remarked, must be strictly construed and is not to be extended by implications and intendments, or speculations as to what the justice of the case might have

authorized or required, and I can see no reason for the interpolation of the objectionable words, except to embarrass the defendant and to throw upon the sheriff, the responsibility of determining the question, as to whether the whole assessment, though not "due and payable" at the time of the sale, must be paid by the defendant. If the relator considered that the language of the order of the 21st of January, 1873, was ambiguous, or was not such as he was entitled to, he should either have appealed, or moved to have it amended. The interpolation, on his own motion, was unauthorized, and, I think, may be justly complained of by the defendant, and that the warrant of commitment, containing the interpolated words, ought to be set aside. The whole practice, in this case, seems to have been very loose and uncertain. I do not see how a referee, under such a decree, can safely proceed to disburse money on account of prior incumbrances, without some definite ascertainment of the amount of the prior incumbrances, by some adjudication or by some stipulation, binding on all the parties in interest. The serious difficulty with the defendant in this case, so far as the question in controversy between the parties is concerned, grows out of the omission to make the relator a party to the reference before Mr. Johnson. He may be compelled to pay the whole assessment for opening Atlantic avenue, without recourse to the plaintiff in the foreclosure action, to recover back any part of the money paid to him, if it shall be ultimately held that the whole assessment was a lien. The foregoing views lead to a reversal of the order appealed from. The order refusing to set aside the warrant of commitment is reversed, and the commitment is set aside as irregular with ten dollars costs of the motion, and ten dollars costs and disbursements of the appeal.

Present — BARNARD, P. J., TAPPEN and TALCOTT, JJ.

Ordered accordingly.